EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* SAÚL ANÍBAL COMAS SOSA, acusado y apelante.

*Número:* Cr–62–197 *Resuelto:* 11 de marzo de 1963

*Benjamín Ortiz,* abogado del apelante; *J. B. Fernández Badillo, Procurador General, y Nilita Vientós Gastón, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

PER CURIAM: El apelante fue declarado culpable de infringir el Art. 8 de la Ley de Automóviles y Tránsito de Puerto Rico, consistente en que "bajo los efectos de bebidas embriagantes conducía un vehículo de motor... el cual dejó chocar contra otro vehículo . . ." y fue sentenciado a cumplir tres meses de cárcel y se ordenó la suspensión de su licencia de conductor por un término igual a dos años. En este recurso de apelación alega (1) que la sentencia no está sostenida por la prueba presentada y que esa prueba demuestra que el acusado no estaba en estado de embriaguez al conducir el vehículo y (2) que el acusado fue privado de sus derechos constitucionales al obligársele a someterse a un análisis químico.

La prueba de cargo fue al efecto de que el día de los hechos el señor Ricardo Rodríguez conducía el automóvil del señor José López Vélez que iba a su lado; que iban llegando al pueblo de Cabo Rojo y venía en dirección contraria un automóvil dando zigzags corriendo a bastante velocidad; que Rodríguez detuvo la marcha del automóvil que conducía y el otro automóvil que era conducido por el acusado le chocó; que el acusado apestaba mucho a licor, casi no hablaba y si hablaba no se le entendía y no se sostenía bien en sus piernas. Llegó al sitio del accidente la policía y el teniente Hernández ordenó que se le sacara una muestra de sangre al acusado. El doctor Miguel Ángel Lasalle fue llamado del hospital para atender al acusado. Declaró que el acusado botaba sangre por la nariz y presentaba un estado de intranquilidad y de nerviosidad; se veía un poco excitado y presentaba una fuerte contusión en la región nasal con abundante sangre. El acusado no estaba acostado, dió mucho trabajo para la toma de la muestra

de sangre porque se resistía. Al doctor le dió la impresión de una persona que estuviera tomada.

El análisis de la sangre practicado por el Departamento de Salud dió 0.19% gramos de alcohol en 100 gramos de sangre. Con motivo de haber dado un resultado distinto el análisis hecho por el acusado, se hizo un tercer análisis de comprobación y éste dió 0.13% de alcohol, o sea, una merma de seis miligramos. El primer análisis se hizo el primero de marzo de 1961 y el de comprobación se hizo en septiembre 5 del mismo año. Declaró el químico Pedro A. Sierra que el motivo por el cual un análisis pueda dar más alto, es en términos generales el hecho de que haya habido contaminación en la toma de la muestra, en los frenos, en la condensación del alambique, y que también influye el factor tiempo; que una persona con ese porciento de 0.13 puede estar en estado de embriaguez mientras que con 0.20% puede aparentar estar bueno, dependiendo ello de una serie de circunstancias y que los testigos que lo vieron y el médico que lo atendió son los que están en mejores condiciones para decir si el acusado estaba o no en estado de embriaguez.

La prueba de defensa fue al efecto de que el acusado dejó de trabajar ese día después de almorzar por ser un día feriado. Declaró su padre que vió a su hijo (el acusado) cuando subía para el hospital y que no observó ninguna anormalidad en él excepto unos golpes y un poco de sangre. Declaró un mecánico y dice que fue a remolcar el automóvil del acusado y notó que el "pivot" estaba roto, defecto éste que afecta el funcionamiento direccional del vehículo. Otro testigo declaró por la defensa que el acusado conducía a poca velocidad; que el vehículo "como que se descontroló y tuvo un choque con el otro carro que venía"; que no notó ninguna anormalidad en el acusado y que cuando éste se apeó del vehículo estaba bueno.

Al dirimir el conflicto de evidencia, el juez sentenciador dio crédito a la de cargo. No vemos como podamos aceptar

la aseveración del acusado en el sentido de que la prueba de cargo es insuficiente para establecer su culpabilidad.

El argumento del acusado de que su aparente estado, según lo describe la prueba de cargo, se debió a los golpes que recibió, está en abierta contradicción con lo que el propio acusado trató de probar, o sea, que estaba normal y que no se notaba, como establecía la prueba de cargo, que hablara sin entendérsele, ni pudiera sostenerse sobre sus piernas. La insinuación de que el automóvil daba zigzags debido a la rotura del "pivot" tampoco es convincente pues de la prueba de defensa no surge si el "pivot" se rompió al ocurrir el choque o si estaba roto desde antes. El resultado del análisis de comprobación tampoco establece la inocencia del acusado. Mas bien tiende a demostrar su culpabilidad al considerarse conjuntamente con la demás prueba. Véase *Pueblo* v. *Tribunal Superior*, 84 D.P.R. 392 (1962).

El segundo señalamiento de error no tiene méritos. El hecho de que el acusado fuera obligado a someterse a un análisis químico, según alega, carece de importancia en este caso, a los fines de determinar su inocencia o culpabilidad. Fue el abogado del acusado quien preguntó que cuál de los exámenes se iba a presentar en evidencia y al contestar el juez que el de comprobación era el análisis admisible en evidencia, el abogado dijo que admitía el resultado de ese análisis y cuando declaró el químico que lo hizo el acusado no objetó. Pero es que aun eliminando el testimonio del químico había prueba suficiente para sostener la sentencia apelada.

*Se confirmará dicha sentencia.*